Howie *et al. v.* Swaggard *et al.**

(Division A.   March 29, 1926.)

[107 So. 556.   No. 25423.]

1. Frauds, Statute of. *Unsigned memorandum of terms of sale of standing timber is not covered by signature of vendor on back of check given him by vendee in part payment, unless it is referred to in check, or physically attached thereto in such manner as to be part thereof.*

   An unsigned memorandum of the terms of a sale of standing timber is not covered by the signature of the vendor on the back of a check given him by the vendee in part payment for the timber, unless it is referred to in the check or physically attached thereto in such manner as to be a part thereof.

2. Frauds, Statute of. *Memorandum of sale of standing timber, though complete in all other respects, is not sufficient compliance with statute of frauds, unless delivered to buyer.*

   A memorandum of the sale of standing timber, though complete in all other respects, is not a sufficient compliance with the statute of frauds, unless delivered to the vendee.

3. Frauds, Statute of. *Acceptance of part of purchase price does not render valid parol contract for sale of land, nor estop acceptor from refusing to carry out contract.*

   The acceptance of part of the purchase money does not give validity to a parol contract for the sale of land, nor estop the acceptor from refusing to carry out the contract.

4. Frauds, Statute of. *Part performance will not take parol sale of lands out of statute of frauds; exceptions to statute of frauds on account of part performance will not be ingrafted on statute; fact that vendor fraudulently evaded part of agreement to reduce part of contract to writing is not sufficient to take case out of statute of frauds.*

   It is the settled doctrine in this state that part performance will not take a parol sale of lands out of the statute of frauds; no exceptions of that character will be ingrafted on the statute. Neither will it be sufficient to take the case out of the statute that it formed a part of the contract itself that it should be reduced to writing, but the vendor fraudulently evaded this part of the agreement.

5. EQUITY. *Where fraud is charged in bill for specific performance, it need not be answered, if bill admitting fraud presents no ground for relief; bill to enforce parol sale of land, charging defendant with fraudulently refusing to reduce agreement to writing, though it was part of contract, may be demurred to, without answer to charge of fraud.*

When fraud is charged in the bill, it need not be answered, if the bill, admitting the fraud, presents no ground for relief. A bill, therefore, to enforce a parol sale of land, charging the defendant with fraudulently refusing to reduce the agreement to writing, though it was part of the contract it should be so reduced, may be demurred to, without an answer to the charge of fraud.

*Corpus Juris-Cyc. References: Equity, 21CJ, p. 471, n. 56 New; Frauds, Statute of, 27CJ, p. 262, n. 82; p. 263, n. 93; p. 300, n. 83; p. 335, n. 34; p. 336, n. 35 New; p. 344, n. 10; p. 349, n. 53; p. 354, n. 79 New; p. 377, n. 93 New; On necessity and sufficiency of delivery of memorandum of sale, see 25 R. C. L., p. 675.

APPEAL from chancery court of Rankin county.

HON. G. C. TANN, Chancellor.

Suit by W. T. Howie and others against C. S. Swaggard and others for specific performance. From a decree sustaining a demurrer to and dismissing complainants' bill, complainants appeal. Affirmed.

*Howie & Howie,* for appellants.

I. *The agreement made orally was actually reduced to writing.* The check was issued for ten dollars on which it was stated what was being sold and the amount being paid, namely, ten dollars and the amount of the balance on the purchase price; namely, nine hundred ninety dollars. There is no uncertainty about the description of the property agreed to be sold nor any uncertainty about the price which was to be paid, so that as far as the seller was concerned he knew what he was selling and what he was to receive therefor; and the purchaser knew what he was buying and what he was paying therefor. This constitutes the material portions of the contract and is sufficient to show what was intended,

what was being bought and the amount paid therefor. This check was accepted by Swaggard as cash and retained by him, and is still retained by him. The bill recites, on information and belief and charges accordingly, that the same was endorsed by said Swaggard.

As we understand the situation, it certainly rises to the level of an offer in writing and acceptance by Swaggard. The offer is sufficiently written into the check and when Swaggard accepted the check and endorsed the same, even though he had not yet returned the check to the appellants, it still constitutes a contract. Many contracts are made by offer being made in writing by one party and accepted by the other without the acceptance being returned to the party making the offer. *Peevey* v. *Haughton,* 72 Miss. 918, 17 So. 378.

II.  *There is a maxim of equity which holds that one party to a contract cannot act in such manner as to hold the other party without himself being estopped from saying that he is not himself bound.* The appellants are bound in three distinct ways:  (1)  The check is negotiable and outstanding against them.  (2)  The check itself shows the contract signed by them, which is enforceable against them.  (3)  The contract is further evidenced by the written deed prepared by the appellants and signed by Swaggard, but which has not yet been delivered by him.

Under the above maxim of equity Swaggard is estopped from claiming that he is not bound by his agreement. He cannot be permitted to accept the check, keep the same and hold appellants bound to the agreement subject to any change of mind he may have. Having made the agreement, accepted the check and accepted the contract and executed it, he cannot after the lapse of a long period of time be heard to contend that he is not obligated to perform his part thereof.

III.  *No one can profit by his own fraud.* Our courts have uniformly held that where an oral contract was

made and afterwards one of the parties thereto by his own fraud prevented the written agreements being delivered, that they will not be allowed to take refuge under the statute of frauds. This rule was established early in the history of our chancery practice. *Finucane* v. *Kearney et al.,* 1 Freeman's Chancery Practice, p. 65. This case is still the law in Mississippi and fits our case exactly.

IV. *Where fraud is charged in the bill, a demurrer will not be sustained until the charge of fraud has been denied under oath.* This has not been done here, so this case necessarily would have to be reversed.

*S. L. McLaurin,* for appellees.

Standing timber being a part of real estate is within the statute of frauds. *Hoop Co.* v. *Barnett et al.,* 127 Miss. 81, and cases there cited. It is not charged in the original bill of complaint that the instrument of writing was ever signed by appellee, defendant below. In fact the original bill of complaint taken in connection with the amendment thereto, shows directly that it was not signed by appellee. The original bill of complaint charges that complainants paid defendant ten dollars and accompanied the payment by a memorandum in writing as follows; to-wit: "Part payment on all timber on the southeast quarter of the northwest quarter, section fourteen and west half and northeast quarter, section fifteen, township 7, range 3 east, Rankin county, Mississippi, balance due nine hundred ninety dollars." It is not charged that this memorandum in writing was signed by defendant. This memorandum in writing if signed by defendant would not have sufficiently set out the terms of the purchase. It is as necessary to set out definitely the terms of the purchase as it is to give a full description of the property to be conveyed. *Nickerson* v. *Land Co.,* 118 Miss. 723.

Complainants undertake to bind defendant on the allegation that the complainants delivered to defendant a check with a memorandum on it and that the defendant endorsed the check. The acceptance of a check with a memorandum on it, and the endorsement of the check by the defendant would not be a writing signed by the parties to be charged, as required by the statute of frauds. The writing must be delivered to the complainants; and it is clearly charged in the bill of complaint and the amendment thereto that although the check was endorsed by defendant, it was never delivered by defendant to complainants. The allegation that the defendant still holds the check for ten dollars is of no consequence as the complainants would have a perfect right to stop payment on the check.

Complainants contend that the demurrer should have been overruled because the allegations of fraud were not denied under oath by the defendant. The facts relied upon by complainants, as set out in the bill of complaint, do not show any fraud and, therefore, the conclusions of the pleaders as to the fraud will not be accepted as a case of fraud.

The court very properly sustained the demurrer to complainant's bill and dismissed the bill. The case should be affirmed.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a decree sustaining a demurrer to and dismissing an orignal bill of complaint, wherein the complainants seek the specific performance of an alleged contract for the sale of standing timber. The bill alleges:

That "the complainants bought from the defendant C. S. Swaggard all of the timber on the southeast quarter of the northwest quarter, section fourteen, and the west half of the northeast quarter, section 15, all in township 7, range 3 east, all in Rankin county, state of Mississippi, and paid the said Swaggard ten dollars

to bind the trade, the payment being accompanied by a memorandum in writing in words as follows, to-wit: 'Part payment on all timber on southeast quarter of northwest quarter, section 14, and the west half of northeast quarter, section 15, township 7, range 3 east, Rankin county, state of Mississippi; balance due nine hundred ninety dollars.' That said payment was accepted in part payment for said property, and thereafter the deed was written and executed by the said C. S. Swaggard in words and figures as appears set out by a copy of the same, which said copy is hereto attached and marked Exhibit A hereto. That the said C. S. Swaggard executed this deed, and complainants charge on information and belief that the same has been mailed to a bank for delivery.''

The bill further alleges that the ten dollars to ''bind the trade'' was paid to Swaggard by means of a check which he indorsed ''by writing his name on the back thereof'' and still retains; that the deed which Swaggard agreed to deliver to the complainants has not been delivered, and Swaggard's reason therefor is that he has conspired with another to fraudulently withhold the deed, in order to obtain a greater price from the complainants for the timber.

The appellants' contentions are: First, that the written memorandum which ''accompanied'' the check to Swaggard is sufficient to satisfy the statute of frauds; second, Swaggard, having accepted and retained the check for ten dollars given him ''to bind the trade,'' is estopped thereby ''from claiming that he is not bound by his agreement;'' third, that Swaggard cannot invoke the statute of frauds, for the reason that his motive in refusing to comply with his promise to execute the deed was that he might perpetrate a fraud on the appellants; fourth, that the allegation of fraud contained in the bill should have been denied by answer.

Assuming, for the purpose of the argument, that the memorandum which accompanied the check to Swaggard identifies him as the seller of the timber and sufficiently sets forth the terms of the sale, it is insufficient to satisfy

the statute of frauds and to entitle the appellants to a decree for specific performance for two reasons: .

(a)  The memorandum was not signed by Swaggard, and was neither referred to in the check nor physically attached thereto in such manner as to be a part thereof, and covered by Swaggard's signature on the back of the check. *Fisher* v. *Kuhn,* 54 Miss. 480; *Wilkinson* v. *Taylor Mfg. Co.,* 7 So. 356, 67 Miss. 231.

(b)  The check was not negotiated or returned to the appellants by Swaggard, but, on the contrary, was retained by him; consequently it did not become effective as a memorandum of an agreement by Swaggard to convey the timber, for, in order to become effective as such, it must have been delivered to the appellants. *Johnson* v. *Brooks,* 31 Miss. 17, 66 Am. Dec. 547.

2.  The acceptance of part of the purchase money does not give validity to a parol contract for the sale of land, nor estop the acceptor from refusing to carry out the contract. *Fisher* v. *Kuhn,* 54 Miss. 480.

3.  "It is the settled doctrine in this state that part performance will not take a parol sale of lands out of the statute of frauds; no exceptions of that character will be ingrafted on the statute. . . . Neither will it be sufficient, to take the case out of the statute, that it formed a part of the contract itself that it should be reduced to writing, but the vendor fraudulently evaded this part of the agreement." *Box* v. *Stanford,* 13 Smedes & M. 93, 51 Am. Dec. 142.

4.  "When fraud is charged in the bill, it need not be answered, if the bill, admitting the fraud, presents no ground for relief. A bill, therefore, to enforce a parol sale of land, charging the defendant with fraudulently refusing to reduce the agreement to writing, though it was part of the contract it should be so reduced, may be demurred to, without an answer to the charge of fraud." *Box* v. *Stanford,* 13 Smedes & M. 93, 51 Am. Dec. 142.

The case of *Finucane* v. *Kerney,* Freem, Ch. 65, relied on by counsel for the appellants in support of their last two contentions, was not decided by this court or

its predecessor, the high court of errors and appeals, but by the old "superior court of chancery," and the English decisions therein relied on were afterwards expressly repudiated by the high court of errors and appeals in *Box* v. *Stanford, supra,* wherein the court expressly held that no exception would be ingrafted on the statute of frauds, but that it would be enforced as written.

*Affirmed.*