370 So.2d 935 (1979)
ANDERSON CONSTRUCTION COMPANY, INCORPORATED,
v.
LYON METAL PRODUCTS, INCORPORATED.
No. 51200.
Supreme Court of Mississippi.
May 9, 1979.
Rehearing Denied May 30, 1979.
Reynolds & Mockbee, David W. Mockbee, Jackson, for appellant.
Knight & Van Slyke, Leonard D. Van Slyke, Jr., Jackson, for appellee.
Before ROBERTSON, WALKER and LEE, JJ.
LEE, Justice, for the Court:
Anderson Construction Company (Anderson) filed suit in the Chancery Court for the First Judicial District of Hinds County (Honorable J.C. Stennett, presiding) against Lyon Metal Products, Inc. (Lyon) seeking damages in the sum of nine thousand seven hundred fifty dollars ($9,750.00) because of Lyon's failure to honor a bid submitted by it to appellant. The chancellor held that Anderson was barred by the statute of frauds, dismissed the bill of complaint, and Anderson has appealed.
*936 In March, 1977, the Board of Trustees, Jackson Municipal Separate School District, advertised for bids on the construction of an addition to Jim Hill High School in the City of Jackson. Anderson submitted the lowest bid and was awarded the contract. On April 4, 1977, prior to submitting its bid, Anderson obtained a number of telephone quotations for materials and installation of steel lockers as designed in the construction plans and specifications. Ronald Sparks, representative of appellee, quoted appellant the sum of five thousand eight hundred ninety dollars seventy-four cents ($5,890.74) for the lockers and an additional one thousand seventy-six dollars seventy-eight cents ($1,076.78) for which it would install them. On the same date, appellant received quotations from Dupree Building Materials for a combined price of eleven thousand four hundred sixty-four dollars ($11,464.00) for lockers and installation and from A.K. Equipment Company in the amount of ten thousand two hundred seventy-seven dollars ($10,277.00) for lockers and fourteen hundred fifty dollars ($1,450.00) for installation.
The plans for the high school addition called for a quantity of four hundred ninety-six (496) lockers to be installed. In compiling his quote, Sparks mistakenly determined that the plans called for only three hundred six (306) lockers and appellee's bid was submitted based on the cost and installation of that number. On the same date, appellee confirmed his quote and bid price by letter to appellant. Appellee received a purchase order from appellant for 496 lockers on April 22, 1977, in the amount quoted by it on the 306 lockers. Appellee reviewed the construction plans and found to its surprise that there was a second floor addition to be constructed, and its original quote was erroneous because of that oversight. On May 2, 1977, a representative from appellee contacted appellant, suggested that appellant obtain quotes from other people in the area (to inform it of the fair cost) and then submitted to appellant a written quotation for 496 lockers at a price of nine thousand five hundred one dollars eighty-six cents ($9,501.86) plus seventeen hundred forty-five dollars forty-two cents ($1,745.42) for installation. Appellant rejected that offer, proceeded to purchase lockers and install them itself at a total cost of fourteen thousand five hundred ten dollars ($14,510.00), and filed suit for the difference between such amount and the amount of appellee's original bid. Appellant argues that the doctrine of promissory estoppel is applicable and that such doctrine is an exception to the statute of frauds. Further, that there was no contract which would bring the matter within the statute of frauds.

I.
Did the trial court err in holding that appellee was not promissorily estopped to defend upon the statute of frauds?

II.
Did the trial court err in holding that the statute of frauds barred the suit?
The applicable section of the statute of frauds, Mississippi Code Annotated Section 75-2-201 (1972), follows:
"(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.
(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten (10) days after it is received.

*937 (3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable
(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or
(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or
(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (Section 2-606) [§ 75-2-606]."
The doctrine of promissory estoppel is stated in Martin v. Dixie Planing Mill, 199 Miss. 455, 463, 24 So.2d 332, 334 (1946) quoting from Restatement of the Law of Contracts, as follows:
"In A.L.I. Restatement of the Law of Contracts, § 90, p. 110, this principle is announced: `A promise which the promissor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.' This Court adopted and applied that rule in Lusk et al v. Universal Credit Co., 164 Miss. 693, 145 So. 623, and in Brewer v. Universal Credit Co., 191 Miss. 183, 192 So. 902."
This Court, in Thomas v. Prewitt, 355 So.2d 657 (Miss. 1978), declined to diminish the effect of the statute of frauds by applying the principle of estoppel, and stated:
"In Tanner v. Walsh, 184 Miss. 147, 183 So. 278 (1938), a pre-code case, we stated:
(2) What we are, in effect, asked by the appellant to do is to engraft an exception on the statute by interpreting it as if it contained, after the words, `for a longer term than one year,' the following or similar words: `unless the lessor, when making the lease, promises the lessee to observe it without its being reduced to writing, and permits the lessee to expend money on the leased premises in reliance on such promise.' This we cannot do, for this Court, contrary to the course pursued by some others, has uniformly held that it is without power to engraft exceptions on the statute, and must enforce it as written. Among the many cases so holding see Beamon v. Buck, 9 Smedes & M. 207; Box et al. v. Stanford, 13 Smedes & M. 93, 51 Am.Dec. 142; Howie v. Swaggard, 142 Miss. 409, 107 So. 556. Cf. Delta Lumber Co. v. Wall, 119 Miss. 350, 80 So. 782. To hold otherwise would destroy the purpose of the statute to prevent frauds and perjuries." 355 So.2d at 661.
See also Cox v. Cox, 289 So.2d 609, 613 (Ala. 1974).
The appellant argues that, if there was in existence a contract between appellant and appellee, the latter did not respond to appellant's purchase order for the 496 lockers, did not deny same within ten (10) days as provided by the statute, and appellee was bound for such failure. However, it is undisputed that on the day of the quote appellee confirmed same for 306 lockers and appellant never responded to, nor denied, that confirmation.
We are of the opinion that the chancellor correctly decided these two questions.

III.
Did the court err in holding that the statute of frauds applied to the sale of lockers and installation?
Appellant contends that the quote by appellee was a contract for services as well as a sale and that the service feature removed the contract from the statute of frauds. In Port City Construction Co., Inc. v. Henderson, 266 So.2d 896 (Ala.App. 1972), the Alabama Court of Civil Appeals held that a *938 transaction involving work and labor was really a contract for sale and was controlled by the provisions of the Uniform Commercial Code.
In Bonebreak v. Cox, 499 F.2d 951 (8th Cir.1974), the Federal Court held that the UCC applies in cases involving both sales and services, and the predominant feature of the contract (sales or services) controls to determine the applicability of the statute. In the present case, the contract was essentially for the sale of goods and is governed by the statute.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.