Hezekiah B. **FRAZIER**, Plaintiff,

v.

The **COLONIAL WILLIAMSBURG FOUNDATION**, Defendant.

**Civ. A. No. 83–32–NN.**

United States District Court, E.D. Virginia, Newport News Division.

Sept. 9, 1983.

Gary C. Tepper, Steptoe & Johnson, Washington, D.C., Robert E. McLaughlin, Vienna, Va., for plaintiff.

A. Neal Barkus, Hunton & Williams, Washington, D.C., for defendant.

## MEMORANDUM ORDER

MacKENZIE, Chief Judge.

Defendant Colonial Williamsburg Foundation has moved, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for partial summary judgment in the instant action. Plaintiff Frazier brought this suit against Colonial Williamsburg, claiming that he was wrongfully discharged. Frazier's complaint has three counts: first, that the discharge violated the provisions of Title VII; second, that Colonial Williamsburg's actions deprived Frazier of his rights under 42 U.S.C. § 1981; and third, that Colonial Williamsburg breached the employment agreement which it had with Frazier by firing him without just cause. Defendant Colonial Williamsburg has moved for summary judgment as to Count Three, arguing that there is no genuine issue of fact in dispute or, alternatively, that Frazier's contract claim has been preempted by Title VII.

I

The moving party on a summary judgment motion bears the burden of demonstrating that there is no genuine dispute as to the material facts underlying a claim. The movant has a heavy burden given that the Court is directed to read the evidence offered in a light most favorable to the

opposing party. After considering the motion in this manner, this Court finds that Colonial Williamsburg has failed to sustain its burden. A triable issue of fact remains as to whether Colonial Williamsburg and Frazier had an agreement that Frazier would not be fired except for just cause.

■ In Virginia, an employment relationship is presumptively "at will" where no specific time limit is set on the length of employment. This presumption is rebutted when the employer promises that the relationship will end only for a good cause and the employee relies upon that promise. The promise then becomes enforceable and the employment relationship is no longer "at will". *Norfolk Southern Railway Co. v. Harris*, 190 Va. 966, 59 S.E.2d 110 (1950). While the promise was embodied in a written contract in *Norfolk Southern*, the same general principle applies here. In this case it is up to the jury to determine whether the evidence mustered by Frazier gives rise to the conclusion that Frazier had an enforceable promise from Colonial Williamsburg that it would not fire him without just cause.

■ In his affidavit and in various depositions, Frazier has produced evidence indicating that Colonial Williamsburg may have expressly and/or impliedly made such a promise and that Frazier may have reasonably relied upon such a promise. Frazier draws upon four pieces of evidence to construct his argument. First, that Colonial Williamsburg followed a publicly announced policy to encourage long-term employment. Second, that Colonial Williamsburg, as a matter of practice, fired employees only for cause. Third, that Frazier received oral assurances that he would be fired only for cause. Fourth, that the employee manual which Frazier received constituted a written assurance to him that he could be terminated only for cause. All four are entitled to respect by the jury and together they raise a triable issue of fact for the jury to consider.

Colonial Williamsburg has argued that the record does not show that Frazier received oral *assurances* that he would be fired only for cause. Defendant's contentions are not borne out. This Court cannot ignore Frazier's statements in his affidavit that he was given such oral promises. 6 J. Moore, Moore's Federal Practice ¶ 56.22[1] at 1325–26 (2nd ed. 1982). And in his deposition, Frazier testified as to the statements made to him by Colonial Williamsburg officials which, read broadly, would constitute assurances. Moreover, Frazier testified as to his understanding that he would not be fired except upon good cause. Defendant's reliance upon Frazier's statement that he did not have "an employment agreement" is misplaced. Frazier's other responses in his deposition, *see* Frazier Deposition at 20, 23, 145, create a triable issue of fact and it is up to the jury to determine the weight to ascribe to them.

■ Contrary to the defendant's suggestion, the Statute of Frauds, Va.Code § 11–2(7) (1978), is not triggered here. A writing is not needed so long as the contract can be performed within a year, even if only by some improbable event. *Silverman v. Bernot*, 218 Va. 650, 239 S.E.2d 118 (1977). The contract which Frazier alleges could be performed within one year since, for example, Frazier could have been discharged for good cause within a year of having been hired.

Defendant has also objected to Frazier's assertion that the employee manual distributed to him by Colonial Williamsburg provided him with contractual rights. As the Virginia Supreme Court has not specifically spoken on this matter this Court cannot find that Frazier had an employment contract with Colonial Williamsburg consisting of all the provisions of the employee manual. *See, Sherman v. St. Barnabus Hospital*, 535 F.Supp. 564 (S.D.N.Y.1982).

On the other hand, the Virginia Supreme Court has held that a memorandum promising severance pay, distributed by the employer to the employees, was an offer which the employee accepted by performing his services. *Hercules Powder Co. v. Brookfield*, 189 Va. 531, 53 S.E.2d 804 (1949); *see, Dulany Foods, Inc. v. Ayers*,

220 Va. 502, 260 S.E.2d 196 (1979). As a result, this Court may ask the jury to consider whether the employer, speaking through the employee manual, made a specific promise not to discharge employees except for good cause. In sum, the question of whether the employee manual, while not creating an employment contract as such, may have constituted a binding promise, remains an issue of fact for the jury to decide.

## II

Colonial Williamsburg also argues that Frazier's contract claim has been pre-empted by Title VII. While this is an attractive argument on its face, it does not withstand closer scrutiny.

An area of law has been pre-empted by the federal government only where it clearly intends to do so, where the federal interest is predominant or where the state scheme may produce a result inconsistent with the goals of the federal policy. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Title VII meets none of these criteria.

The legislative history of Title VII as well as the Act itself make clear that Title VII was designed to provide an additional source of rights rather than an exclusive federal statutory scheme to remedy employment discrimination. Section 708 of Title VII, 42 U.S.C. § 2000e–7 (1981), provides:

> Nothing in this title shall be deemed to exempt or relieve any person from any liability, duty, penalty or punishment provided by any present or future law of any state . . . .

The Supreme Court, in holding that Title VII does not pre-empt a plaintiff's claim under a collective bargaining agreement, described the legislative history of Title VII as follows:

> . . . [it] manifests a Congressional intent to allow an individual to pursue independently his rights under both Title VII and other applicable state and federal statutes. The clear inference is that Title VII was designed to supplement, rather than to supplant, existing laws and institutions relating to employment discrimination.

*Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974). Finally the Supreme Court has stated, "Title VII explicitly leaves the states free, and indeed encourages them, to exercise their regulatory power over discriminatory employment practices." *New York Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 67, 100 S.Ct. 2024, 2032, 64 L.Ed.2d 723 (1980), *Accord, Johnson v. Railway Express Agency*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). (Title VII does not pre-empt plaintiff's claim under § 1981.)

A common law rule that prohibits an employer from firing an employee for racially discriminatory reasons is one of Virginia's regulatory mechanisms which Congress intended to retain as a cause of action, separate from Title VII. Congress has not shown a clear intention to pre-empt the field, *compare, e.g.*, Labor Management Relations Act, § 301, 29 U.S.C. § 185 (1978), nor has it expressed its sense that the federal interest is exclusive in this area. Indeed, as described above, the converse is true. Finally, Virginia's common law rule seeks a result consistent with the objections of Title VII. In sum, Title VII has not pre-empted plaintiff Frazier's claim in contract.

### Conclusion

In light of the foregoing, defendant Colonial Williamsburg's motion for partial summary judgment is DENIED.

It is so ORDERED.