**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DERTHICK ASSOCIATES, INCORPORATED;
RICHARD T. DERTHICK,
Plaintiffs-Appellants,

v.                                                              No. 95-2230

BASSETT-WALKER, INCORPORATED;
V F CORPORATION,
Defendants-Appellees.

STANLEY ROBBINS; STAN ROBBINS AND
ASSOCIATES, INCORPORATED,
Plaintiffs-Appellants,

v.                                                              No. 95-2231

BASSETT-WALKER, INCORPORATED;
V F CORPORATION,
Defendants-Appellees.

SLAYTON ASSOCIATES, INCORPORATED,
Plaintiff-Appellant,

v.
                                                                No. 95-2232
BASSETT-WALKER, INCORPORATED;
V F CORPORATION,
Defendants-Appellees.

Appeals from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Chief District Judge.
(CA-94-26-D, CA-94-27-D, CA-94-28-D)

Argued: May 6, 1996

Decided: February 12, 1997

Before RUSSELL and MICHAEL, Circuit Judges, and
PAYNE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Arthur McKee Wisehart, WISEHART & KOCH, New
York, New York, for Appellants. James Marion Powell, Brian Marc
Freedman, HAYNSWORTH, BALDWIN, JOHNSON & GREAVES,
P.A., Greensboro, North Carolina, for Appellees. **ON BRIEF:** Stuart
L. Craig, CARTER, BASS, BLAIR & KUSHNER, Danville, Vir-
ginia, for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM

This appeal ensued the grant of summary judgment in favor of
Bassett-Walker, Inc. and its parent, VF Corporation, on all claims
presented by each plaintiff-appellant. Our review of the award of
summary judgment is de novo. Higgins v. E.I. DuPont de Neumours
& Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Having conducted that
review and having found no error, we affirm on the reasoning given
by the district court.

2

I.

This litigation arose out of actions taken by Bassett-Walker to reorganize and restructure its approach to the marketing of its fleecewear products so that the company could remain competitive in an industry which itself was undergoing substantial change. At the time of the reorganization, each individual and corporate plaintiff was an independent sales representative for Bassett-Walker. No plaintiff represented Bassett-Walker exclusively and none operated pursuant to a written agreement.

Richard Derthick became a commissioned sales representative for Bassett-Walker in 1968. Upon the advice of his accountant, Derthick formed Derthick & Associates, a Michigan corporation which, in 1981, was reincorporated in Ohio. From 1968 until 1989, when the relationship was terminated, Derthick, and then Derthick & Associates, served as Bassett-Walker's sales representative in Michigan, Ohio and Pennsylvania. Stanley Robbins and his company, Stan Robbins & Associates, a Massachusetts corporation, served as commissioned sales representatives for Bassett-Walker from 1965 until the relationship was terminated in 1989. Slayton Associates, Inc. served as a Bassett-Walker commissioned representative in Illinois and elsewhere in the mid-west from 1967 until the relationship was terminated in 1989. All of the terminations resulted from Bassett-Walker's reorganization and restructuring.

Following the termination of their respective relationships, each plaintiff, using the same counsel, filed an action in the United States District Court for the Southern District of New York. The actions were transferred to the Western District of Virginia where they were consolidated for purposes of discovery and dispositive motions, but not for trial.

Derthick and his company asserted claims: (1) for breach of contract, contending that certain oral communications created a contract between plaintiffs and Bassett-Walker that was terminable only for cause; (2) for tortious interference with the relationships between plaintiffs and the customers they had served while acting as Bassett-Walker sales representatives;[1] and (3) conversion of commissions

_____

[1] Count III contains language sounding of civil conspiracy, in reality, the count asserts only a claim for tortious interference with business relations.

3

claimed to be owing plaintiffs by virtue of purchases made from Bassett-Walker by customers plaintiffs had served while acting as Bassett-Walker sales representatives. Derthick, individually, also asserted a claim under the Age Discrimination in Employment Act ("ADEA") 29 U.S.C. § 621, et seq.

Robbins and his company filed virtually identical claims to those filed by Derthick and his company for breach of contract, tortious interference with business relations and conversion. Robbins and his company also filed a claim for wrongful termination under Massachusetts law and for violation of the Massachusetts unfair trade practices law. Robbins, individually, filed an ADEA claim identical to that filed by Derthick.

Slayton Associates filed claims, virtually identical to those filed by Derthick and Robbins, for breach of contract, tortious interference with business relations, and conversion. Slayton Associates also alleged violations of the Illinois Deceptive Trade Practice Act and the Illinois Consumers Fraud and Deceptive Business Practices Act.

II.

The district court first considered the ADEA claims advanced by Derthick and Robbins, individually. The threshold issue was whether the plaintiffs were employees under the ADEA which defines an employee as "an individual employed by any employer." 29 U.S.C. § 630(f).

The district court correctly examined that issue by applying the principles set forth in Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318 (1992), and Garrett v. Phillips Mills, Inc. , 721 F.2d 979 (4th Cir. 1983). Based on the essentially undisputed factual record, the district court held that Derthick and Robbins were independent contractors, not employees.[2] For that reason, the district court held that Derthick and Robbins were not entitled to bring a claim under the ADEA. An examination of the record confirms that the district court was correct in determining that Derthick and Robbins were independent contrac-

_____

2 All three plaintiffs disputed the legal significance attached to the facts, but the facts necessary to the decision were not in dispute.

4

tors and that, therefore, they were not entitled to bring an ADEA claim.

III.

The district court correctly described the contracts which allegedly were breached by Bassett-Walker as oral agreements by which plaintiffs were to solicit orders for Bassett-Walker in certain geographic areas in exchange for a commission which was a specified percentage of the sales price. Upon an undisputed record, the district court determined that the agreements between each plaintiff and Bassett-Walker were verbal. The district court applied Virginia law to resolve the breach of contract claims[3] and, thereupon, rightly held that the record did not support the plaintiffs' contentions that their agreements were terminable only for cause.[4]

Under Virginia law, a contract for services is terminable at will if the intended duration of the contract cannot be reasonably inferred from its terms. Miller v. SEVAMP, Inc., 362 S.E.2d 915, 916 (Va. 1987). And, if one party may terminate at will so may the other. Id. All three plaintiffs asserted that they could terminate the agreements at will. The plaintiffs had the burden of overcoming the terminable at will presumption. Progress Printing Co. v. Nichols, 421 S.E.2d 428, 429 (Va. 1992). There was no evidence that the contracts were for a specified duration. The district court held that vague comments by Bassett-Walker executives were insufficient to overcome the presumption. And, therefore, Bassett-Walker was entitled to terminate its agreements with plaintiffs at will. We find no error in that determination.[5]

_____

[3] By the time of summary judgment, it appeared to the district court that the parties agreed that Virginia law was applicable to the breach of contract claim. And, it appears to us that the district court was correct.

[4] Because there was a contract, albeit verbal, the district court correctly granted summary judgment on the plaintiffs' unjust enrichment claims.
[5] Alternatively, the district court held that, even if the oral contracts were not terminable at will, they ran afoul of Virginia's statute of frauds (citing Graham v. Central Fidelity Bk., 428 S.E.2d 916 (Va. 1993), and Windsor v. Aegis Service, Ltd., 691 F. Supp. 956 (E.D. Va. 1988), aff'd,

5

Finally, the district court also properly rejected the plaintiffs' assertion that, in terminating the plaintiffs' contracts, Bassett-Walker breached a covenant of good faith and fair dealing. Virginia does not recognize an independent claim for breach of such a covenant. Alternatively, the district court fully considered and rightly rejected claims of that ilk under the law of Massachusetts and Illinois.

IV.

The district court also granted summary judgment on the plaintiffs' claims that Bassett-Walker tortiously interfered with customer accounts which the plaintiffs had solicited for Bassett-Walker. In so doing, the district court decided: (i) that the contracts with which Bassett-Walker allegedly had tortiously interfered were solicited, in the first instance, by the plaintiffs for Bassett-Walker; and (ii) that Bassett-Walker and its customers were the only parties to the contracts with which Bassett-Walker allegedly had interfered. Both findings were correct on the undisputed record relating to those questions. In essence, as the district court observed, the plaintiffs' claims reduced to the notion that Bassett-Walker had interfered with its own accounts. For the reasons it gave, the district court correctly granted summary judgment on the claims asserting tortious interference with business relationships.

In a related component of the same claims, the plaintiffs asserted interference with the same accounts by Bassett-Walker when, in subsequent transactions with its customers, Bassett-Walker granted allegedly preferential pricing terms to some large customers without extending the same terms to Bassett-Walker customers which had been serviced by the plaintiffs. The district court correctly held such

_____

869 F.2d 796 (4th Cir. 1989). The district court was correct in reaching that conclusion for the reasons it gave. The plaintiffs assert, for the first time on appeal, that Bassett-Walker is equitably estopped from relying on the statute of frauds. Because that theory was not presented to the district court, we will not entertain it on appeal. This renders moot the motion filed by Bassett-Walker to strike parts of the appellants' brief respecting equitable estoppel and the related motion for sanctions. Accordingly, both motions will be denied as moot.

conduct not to have been actionable under the tort of interfering with business relations.

Finally, Derthick & Associates asserted that Bassett-Walker interfered with relations between Derthick & Associates and its employees by offering some of those employees jobs after Bassett-Walker terminated Derthick & Associates as a commissioned representative. Applying Virginia law, the district court correctly held that, because the relationships between Derthick & Associates and its own sales persons were terminable at will, there could be no recovery on this claim absent proof that Bassett-Walker had used improper means in hiring the Derthick & Associates' sales persons. Considering that Bassett-Walker had informed Derthick & Associates that it planned to expand its in-house sales force and had sought, and received, the permission of Derthick & Associates to talk to its sales persons about employment with Bassett-Walker, the district court correctly held that Bassett-Walker had used no improper means in hiring sales persons employed by Derthick & Associates.

V.

Each plaintiff raised a claim that Bassett-Walker had committed the tort of conversion by "taking accounts" which plaintiffs had solicited for Bassett-Walker. The essence of these claims is that the plaintiffs are entitled to commissions on post-termination sales which were made by Bassett-Walker's in-house sales staff to customers which formerly had been serviced by plaintiffs on behalf of Bassett-Walker. We understand that the basis for granting summary judgment on the conversion claims was that the plaintiffs had no possessory interest in commissions on sales made after the termination of their relationship with Bassett-Walker, and we believe that the district court correctly decided that question. As the district court held, there could be no possessory interest in post-termination sales made by Bassett-Walker to customers formerly serviced by the plaintiffs unless the plaintiffs' termination was unlawful or unless there was a contract which conferred an interest in commissions on post-termination sales. As the district court held, the termination was lawful.

It is true that Bassett-Walker notified the plaintiffs of termination on June 12, 1989 and allowed them to continue selling as representa-

7

tives through December 1, 1989 and agreed to pay commissions on all orders shipped by May 31, 1990. However, there is no allegation that Bassett-Walker failed in any way to live up to that agreement.

Therefore, there is no possessory interest. Absent such an interest, conversion is not possible, as a matter of law.

VI.

The district court dismissed the Robbins plaintiffs' claims under the Massachusetts Unfair Trade Practices Act because it found that, under Massachusetts choice-of-law principles, <u>Worldwide Commodities v. J. Amicone Co., Inc.</u>, 630 N.E.2d 615 (Mass. 1994), Virginia law controlled the relationship of the parties and that, therefore, the plaintiffs had no claim under the Massachusetts statute. Alternatively, the district court held that, even if Massachusetts law were to apply, the allegedly offending conduct did not occur "primarily and substantially" in Massachusetts, which, under Gen. Laws Ann. ch. 93A, § 11, is a predicate to the successful assertion of a claim under the Massachusetts statute. We find no error in either conclusion.

VII.

The claim of Slayton Associates under the Illinois Sales Representations Act is, as the district court held, simply a recasting of its breach of contract claim. Finding that the plaintiff had received all of the commissions to which it was entitled, the district court granted summary judgment on the claim. We agree.

The claims of Slayton Associates under the Illinois Deceptive Trade Practices Act and the Consumer Fraud and Deceptive Business Practices Act also were properly dismissed for the reasons given by the district court. Indeed, the district court was charitable in not identifying those claims as frivolous.

VIII.

In their briefs before the district court, the plaintiffs argued that the conspiracy language which appeared in their tortious interference

8

claims was sufficient to support a claim for a conspiracy to intentionally injure another in his trade, business or profession under Va. Code Ann. § 18.2-499(A). As the district court held, the plaintiffs did not properly plead, or offer evidence to support, a key element of a claim cognizable under the Virginia statute. Specifically, they neither alleged, nor offered evidence to support, the malice component required under Virginia decisional law. Alternatively, applying the intracorporate conspiracy doctrine as recognized under Virginia law, Fox v. Deese, 362 S.E.2d 699 (Va. 1987), the district court held that the conspiracy claim failed as a matter of law. We find no error in the district court's determination on either issue.

CONCLUSION

Therefore, for the reasons given by the district court, the award of summary judgment is

AFFIRMED.

9